IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-HC-2030-FL

PAUL E. SEELIG,                          )
                                         )
                 Petitioner,             )
                                         )
        v.                               )                    ORDER
                                         )
GEORGE T. SOLOMON,                       )
                                         )
                 Respondent.             )


        The matter came before the court on respondent's motion for summary judgment (DE 17)

pursuant to Federal Rule of Civil Procedure 56(a), which was fully briefed. Also before the court

is petitioner's motion for reconsideration (DE 30). Respondent did not respond to petitioner's

motion. In this posture, the issues raised are ripe for adjudication. For the following reasons, the

court grants both motions.

                              **STATEMENT OF CASE**

        On April 12, 2011, petitioner was convicted following a jury trial in the Wake County

Superior Court of 23 counts of obtaining property by false pretenses. State v. Seelig, 226 N.C. App.

147, 149, 738 S.E.2d 427, 429, 431 (2013). Petitioner then pleaded guilty to the aggravating factor

of taking advantage of a position of trust or confidence to commit the offenses. Petitioner was

sentenced to 10 consecutive terms of 10-12 months imprisonment. Id. at 431. Petitioner did not file

a direct appeal immediately following his conviction. Id. However, on June 24, 2011, petitioner

filed a *pro se* motion for appropriate relief ("MAR") in the Wake County Superior Court. (Resp't's

Mem. p. 1). The superior court then dismissed petitioner's MAR without prejudice to allow

petitioner the opportunity to re-file his MAR after completing his appeal. (Resp't's Mem. p. 1). Petitioner thereafter filed numerous *pro se* petitions in the state appellate court. (Id.)

On December 6, 2011, petitioner filed a *pro se* petition for a writ of certiorari in the North Carolina Court of Appeals seeking a belated direct appeal. Seelig, 738 S.E.2d at 431. On December 15, 2012, the court of appeals granted the petition and permitted petitioner to file a direct appeal. Id. On March 19, 2013, the court of appeals issued an opinion finding no error in petitioner's conviction or sentence. Seelig, 738 S.E.2d at 440. Petitioner subsequently filed a *pro se* petition for discretionary review in the North Carolina Supreme Court, which was denied on June 13, 2013. State v. Seelig, 366 N.C. 598, 743 S.E.2d 182 (2013). On May 28, 2014, petitioner filed a second *pro se* MAR in the Wake County Superior Court, which was summarily denied. (Pet. Ex. E). Petitioner then filed a *pro se* petition for a writ of certiorari in the court of appeals, which was denied on October 27, 2015.[1] (Resp't's Mem. Ex. 5).

On February 2, 2016, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United State District Court for the Middle District of North Carolina. Petitioner raised the following claims in his § 2254 petition: (1) his conviction violated the Due Process Clause of the Fourteenth Amendment to the United State Constitution because there are no federal or state laws defining "gluten free" products; (2) the trial court violated his Fifth Amendment privilege against compelled self-incrimination; (3) he was denied a probable cause hearing in violation of the Due Process Clause; (4) he filed numerous *pro se* motions in the trial

---

[1] While petitioner was exhausting his North Carolina state court remedies, petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254 in this district, which was dismissed for non-exhaustion on August 13, 2013. Seelig v. Soloman, No. 5:12-HC-2099-FL (E.D.N.C. 2013).

court which were never ruled upon; (5) he received ineffective assistance of trial counsel; (6) his conviction violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution or the doctrine of collateral estoppel; (7) his sentence is disproportionate in violation of the Eighth Amendment to the United States Constitution; (8) the sentencing court failed to properly calculate his prior record level; (9) his rights pursuant to the Confrontation Clause of the Sixth Amendment to the United States Constitution were violated when the trial court permitted a witness to testify through a live, two-way, closed circuit broadcast; and (10) there was insufficient evidence to convict him.

On February 10, 2016, the Middle District of North Carolina transferred the action to this court. On May 13, 2016, respondent filed a motion for summary judgment arguing that petitioner is not entitled to habeas relief. Respondent subsequently filed a motion to amend or supplement his motion for summary judgment to include an additional defense, and the court granted respondent's motion. On July 13, 2016, petitioner filed a motion for leave to exceed the page limitation for his response to respondent's motion for summary judgment. On July 19, 2016, the court granted petitioner's motion, but limited his response brief to 40 pages. Petitioner then filed a 60-page response to respondent's motion for summary judgment, and a motion for reconsideration of the court's July 19, 2016, order limiting his brief to 40 pages. Respondent filed a reply.

## STATEMENT OF FACTS

The facts as summarized by the North Carolina Court of Appeals are as follows:

> The State's evidence tended to show the following facts. Defendant was the owner of Great Specialty Products, a company that sold, among other things, bagels, breads, and other baked edible goods (collectively "bread products") that were advertised as homemade and gluten free. Gluten is a protein found in wheat, barley, and rye.

3

Some people, including people diagnosed with celiac disease, are gluten intolerant because their bodies recognize gluten as a foreign substance and create antibodies that actually work to damage the body.

When people with gluten intolerance ingest gluten, their symptoms include abdominal bloating, indigestion, abdominal cramping and pain, diarrhea, vomiting, acidosis, and fatigue. For some, but not all, people with celiac disease, ingesting even a very small amount of gluten can cause these symptoms. People who are gluten intolerant are treated by working with nutritionists to maintain gluten-free diets; there is no medication to treat celiac disease.

Defendant began selling his bread products—represented as gluten free—in August 2009. He operated out of a booth at the flea market located on the State Fairgrounds in Raleigh, North Carolina. Defendant next sold the bread products from a booth at the 2009 State Fair in Raleigh. During the fall of 2009 and early 2010, defendant also sold the bread products online from a "Great Specialty Products" website. He delivered the products to customers' homes anywhere within a 40–minute drive from Morrisville, North Carolina.

None of the bread products advertised by defendant as gluten free were actually gluten free. Defendant bought all of the bread products either completely premade or in a partially-baked, frozen form that only needed to be baked briefly in the oven. Many, but not all, of the bread products sold on defendant's website as gluten free were manufactured by Tribecca Oven, a New Jersey bakery. Because gluten is integral to Tribecca Oven's manufacturing process, a witness from Tribecca Oven described the company as a "gluten machine" and testified that all of the bread products manufactured by Tribecca Oven contain gluten.

All of the bagels and some of the other products defendant represented as homemade and gluten free were purchased from Sam's, Costco, or BJ's. The remainder of the bread products were delivered by truck to defendant's home. None of the products received or purchased by defendant for resale bore labels indicating they were gluten free. The premade bread products were simply repackaged for sale by defendant. The products purchased in a frozen, partially-baked form were briefly baked in an oven and then packaged for sale by defendant. Laboratory testing on 12 of 13 samples of bread products sold by defendant and advertised as gluten free indicated that those samples contained gluten.

4

During the fall of 2009 and early 2010, defendant or one of his employees sold bread products to at least 23 persons who would not have purchased the products if the products had not been advertised as gluten free. Many of those persons either had celiac disease or were purchasing the products for a person with celiac disease. At least one of those individuals filed a complaint with the North Carolina Department of Justice. The North Carolina Department of Agriculture and Consumer Services investigated defendant and filed a civil action against him seeking permanent injunctive relief. The Department of Agriculture obtained a temporary restraining order against defendant pending a hearing on a preliminary injunction. The record does not contain any further information regarding that civil action.

On 6 April 2010, defendant was indicted for nine counts of obtaining property by false pretenses. On 9 November 2010, defendant was indicted for an additional 19 counts of obtaining property by false pretenses. At trial, defendant testified that he never advertised or sold products as gluten free that he knew, in fact, contained gluten. Defendant claimed he purchased all of his gluten-free products from "Rise 'n Bakeries," an Amish bread products manufacturer located in Millsburg, Ohio. He purchased regular bread products from other companies. According to defendant, none of his bread products or bagels were bought at Costco, Sam's, or BJ's. Defendant testified he regularly performed tests on the products he sold as gluten free to ensure that they were, in fact, gluten free.

Defendant further testified that as of 22 December 2009, defendant believed there may have been cross-contamination at some point during the production process of his bread products such that the end product was not actually gluten free. Defendant promptly notified his customers and began printing labels on the products warning that they may have been contaminated with gluten.

Defendant also presented the testimony of one of his customers, Sharon Hargraves. Ms. Hargraves testified that she has celiac disease, she purchased bread products from defendant throughout the fall of 2009, and she showed no symptoms of having ingested gluten.

At trial, the State dismissed four counts of obtaining property by false pretenses, and the trial court dismissed an additional count of obtaining property by false pretenses on defendant's motion at the close of all the evidence. The jury found defendant guilty of 23 counts of obtaining property by false pretenses. Defendant then pled

5

guilty to the aggravating factor that he took advantage of a position of trust or confidence to commit the offenses.

The trial court consolidated the convictions into 11 judgments. In each judgment, the court sentenced defendant to an aggravated-range term of 10 to 12 months imprisonment and further ordered that all of the sentences run consecutively. Defendant's written notice of appeal was not timely, but this Court granted defendant's petition for writ of certiorari.

Seelig, 738 S.E.2d at 430-431.

## DISCUSSION

A.      Motion for Reconsideration

Petitioner seeks reconsideration of the court's July 19, 2016, page limitation order to the extent that it limits petitioner's response to respondent's motion for summary judgment to 40 pages. The court grants petitioner's motion for reconsideration, and accepts petitioner's 60-page response brief.

B.      Motion for Summary Judgment

1.      Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

6

(1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

7

<u>Bell v. Jarvis</u>, 236 F.3d 149, 160 (4th Cir. 2000), <u>cert. denied</u>, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1).

        2.      Analysis

            a.      Procedural Default

The court first determines whether several claims not raised on direct appeal are procedurally defaulted. These claims at issue include: the Wake County Superior Court lacked subject matter jurisdiction; petitioner was convicted in violation of the Ex Post Facto Clause of the Fourteenth Amendment to the United State Constitution; the state failed to turn over exculpatory evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); the trial court refused to permit plaintiff to terminate his counsel or to proceed *pro se;* and lack of notice because there are no federal or state laws defining gluten free products.

A prisoner must exhaust the remedies available to him in state court before he files a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1)(A). Section 2254's exhaustion requirement demands that state prisoners give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999). This "one full opportunity" includes filing petitions for discretionary review with the state supreme court when that review is part of the ordinary appellate procedure in the state. <u>See</u> <u>id.</u> In North Carolina, a petitioner may satisfy the exhaustion requirement of § 2254 by directly appealing his conviction to the North Carolina Court of Appeals and then petitioning the Supreme Court of North Carolina for discretionary review, or

by filing a MAR and petitioning the North Carolina Court of Appeals for a writ of certiorari. See N.C. Gen. Stat. §§ 7A-31, 15A-1422.

Petitioner did not raise the claims at issue on direct appeal. The MAR court subsequently specifically ruled that all claims, other than ineffective assistance of counsel, that were not raised on direct appeal, but could have been raised on direct appeal, are procedurally barred pursuant to N.C. Gen. Stat. § 15A-1419(a)(2) and (3). (Resp't's Ex. 4). Section 15A–1419(a)(3) is an independent and adequate state procedural bar, precluding federal habeas review. See Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008). Petitioner has not demonstrated cause or prejudice or a fundamental miscarriage of justice to overcome the procedural default. See Wright v. Angelone, 151 F.3d 151, 160 (4th Cir. 1998) (finding that a habeas court will not review a claim that is procedurally defaulted absent a showing of cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will occur if the habeas court declines to review the claim). Because petitioner failed to preserve his claims under North Carolina law, they are procedurally barred. See, e.g., Woodford v. Ngo, 548 U.S. 81, 92 (2006); Coleman v. Thompson, 501 U.S. 722, 750 (1991). Accordingly, petitioner's procedural default bars habeas review of the instant claims. Based upon the foregoing, respondent is entitled to summary judgment for these claims.[2]

---

[2] The court alternatively finds that these claims are conclusory and lack merit. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("In order to obtain an evidentiary hearing on an ineffective assistance claim-or for that matter on any claim-a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999).

9

b. Sufficiency of the Evidence

In his first and tenth claims, petitioner contends that there was insufficient evidence to convict him of obtaining property by false pretenses. Specifically, petitioner asserts: (1) there is no federal or state law defining "gluten free" products; (2) that not all of the bread samples were tested; and (3) that the state court indictments were defective. Petitioner raised these challenges to the sufficiency of the evidence on direct appeal, and the court of appeals denied them on the merits.

The standard of review for claims of insufficient evidence on habeas corpus review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Wright v. West, 505 U.S. 277, 284 (1992); Jackson v. Virginia, 443 U.S. 307, 319 (1979). The essential elements for obtaining property by false pretenses consists of the following: "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." State v. Cronin, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980). "[A]n indictment must allege every element of an offense . . . ." State v. Kelso, 187 N.C. App. 718, 722, 654 S.E.2d 28, 31 (2007).

Petitioner's sufficiency of the evidence challenges primarily focus on his claim that there are no state or federal laws defining gluten free and that all of the bread samples were not tested to determine whether they contained gluten. As reflected in the court of appeals' opinion, a witness who worked for petitioner during the relevant time period testified that "other than certain products delivered by truck, all of the bread products sold by [petitioner] were purchased from Costco, BJ's,

10

or Sam's" and that such products were not labeled as gluten free from their original retailers. Seelig, 738 S.E.2d at 436. A representative of Tribecca Oven, additionally, testified that all of its products contain gluten. Id. p. 437. The court of appeals further reasoned:

> [T]he State presented evidence that laboratory technicians employed by the University of Nebraska's Food Allergy Research and Resource Program ("FARRP"), including Mr. Kraft, performed laboratory tests on 13 samples of food products sold by defendant as gluten free, and that all but one of those samples contained a gluten content of greater than 5,000 parts per million. One of the State's experts testified that while the Food and Drug Administration has not provided a definition for "gluten free" in the United States, European countries have specified that products are "gluten free" when they have a gluten content of less than 20 parts per million.
>
> The laboratory tests were performed on samples of one or more bread products submitted by seven of defendant's alleged victims. With respect to the sole sample that did not test positive for gluten, the State's experts further testified that if the sample had fermented prior to testing, it was possible that the test would not detect high levels of gluten even though they were present.
>
> Finally, the victims who did not submit samples for testing provided lay testimony regarding symptoms they or a person for whom they bought defendant's bread products experienced after eating the products. The victims testified that they or the person for whom they bought the products had celiac disease, a wheat allergy, or were gluten intolerant; they attempted to maintain a gluten-free diet; and, upon eating defendant's products, they experienced symptoms consistent with eating gluten, including one or more of the following symptoms: nausea, vomiting, diarrhea, stomach pain, fatigue, insomnia, thyroid problems, bloating, cramping, headaches, tiredness, digestion problems, depression, and skin rash.

Id.

This court agrees with the court of appeal's conclusion that the evidence presented at trial was sufficient that a rational trier of fact could find the essential elements of obtaining property by false pretenses beyond a reasonable doubt. In fact, the state's evidence showed that petitioner knew

11

that he was conducting a fraudulent scheme on the public by passing off the bread he sold as gluten free when he knew it was not. See Seelig, 738 S.E.2d at 436-437. Based upon the foregoing, court of appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the court of appeals' ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e).

The court now turns to petitioner challenge to the sufficiency of his indictments. Petitioner's challenge to his indictments arise out of North Carolina State law. Generally, "[a] claim [challenging a state indictment], when pared down to its core, [that] rests solely upon an interpretation of [the state's] case law and statutes, [ ] is simply not cognizable on federal habeas review." Wright, 151 F.3d at 157. Additionally, the Supreme Court of the United States has stated: "defects in an indictment do not deprive a court of its power to adjudicate a case . . . [and] 'that the indictment is defective does not affect the jurisdiction of the trial court to determine the case presented by the indictment.' " United States v. Cotton, 535 U.S. 625, 630-31 (2002) (quoting United States v. Williams, 341 U.S. 58, 66 (1951)). Thus, petitioner is not entitled to habeas relief on this claim.

      c.    Self-Incrimination

In his second claim, petitioner contends that his Fifth Amendment right to not incriminate himself was violated when the North Carolina Department of Agriculture and Consumer Services (the "Department of Agriculture") forced petitioner to respond to questions within 24 hours and ordered to turn over all of his business records, including customer lists, in his prior civil

proceedings. The information obtained in the course of his civil trial, petitioner contends, was then used in his criminal trial.

The Self–incrimination Clause of the Fifth Amendment ensures that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. In the instant action, petitioner has not identified any specific incriminating evidence or statements that were obtained from his civil proceedings, and used against him in his criminal proceedings.[3] Additionally, there is no evidence to suggest that petitioner asserted his Fifth Amendment privilege in the prior civil proceedings. Because petitioner failed to assert his privilege against compelled self-incrimination at the time of his civil trial, he may not now claim that the use of his statements or evidence from that proceeding amounted to compelled self-incrimination. See Minnesota v. Murphy, 465 U.S. 420, 427 (1984) ("[I]n the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not compelled him to incriminate himself.") (citations and internal quotations omitted)); United States v. Kordel, 397 U.S. 1, 9–10 (1970) (finding a defendant's "failure at any time to assert the constitutional privilege leaves him in no position to complain now that he was compelled to give testimony against himself."). Thus, petitioner is not entitled to habeas relief for this claim, and respondent's motion for summary judgment is GRANTED.

d.     Denial of Probable Cause Hearing

In his third claim, petitioner asserts that he was denied a pretrial probable cause hearing in violation of the Due Process Clause. However, petitioner's grand jury indictments constituted a

---

[3] The court notes that the record reflects that petitioner actually was uncooperative with the Department of Agriculture's efforts to obtain discovery materials in the civil action. (Resp't's Ex. 2, part 4, p. 46).

finding of probable cause, and no preliminary hearing was required. See United States v. Soriano-Jarquin, 492 F.3d 495, 502 (4th Cir. 2007) ("This court has long held that the probable cause requirement may be satisfied either by a preliminary hearing or by indictment by a grand jury.") (citing United States v. Mackey, 474 F.2d 55, 56-57 (4th Cir. 1973)); (Resp't's Ex. 2, part 1, pp. 50-68) (copies of petitioner's indictments). Thus, petitioner is not entitled to habeas relief for this claim, and respondent's motion for summary judgment is GRANTED.

      e.   *Pro Se* Motions

      In his fourth claim, petitioner contends that he filed several *pro se* motions in the trial court which were never ruled upon.[4] Petitioner was represented by counsel at trial. The Constitution does not confer a right to proceed simultaneously through counsel and *pro se*. See McKaskle v. Wiggins, 465 U.S. 168, 183 (1984) (finding no constitutional right to hybrid representation); see also, United States v. Penniegraft, 641 F.3d 566, 569 n.1 (4th Cir. 2011) (holding that where defendant is represented by counsel on appeal, and his appeal is not submitted pursuant to Anders v. California, 386 U.S. 738 (1967), defendant may not submit pro se briefing). Petitioner further has not demonstrated that any of his *pro se* filings were meritorious. Accordingly, any potential error in the trial court not ruling on the *pro se* motions was harmless. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (stating that the harmless error standard requires trial error to have "substantial and injurious effect or influence in determining the jury's verdict" to warrant relief). Thus, petitioner is not entitled to habeas relief for this claim, and respondent's motion for summary judgment is GRANTED.

---

    [4] The court notes that petitioner states that the trial court heard four of his *pro se* motions, and reserved ruling on petitioner's remaining *pro se* motions. ((DE 5), p. 52).

f.    Ineffective Assistance of Counsel

In his fifth claim, petitioner contends that he received ineffective assistance of trial counsel. Petitioner first alleged that his trial counsel provided ineffective advice regarding a plea bargain which caused petitioner to reject a plea offer of 24-29 months imprisonment.  Petitioner next alleged several general claims of ineffective assistance of counsel including, *inter alia*, that counsel did not file any motions, knew very little law, and did not challenge the admissibility of statements. Petitioner raised his ineffective assistance of counsel claims in his MAR and the trial court summarily denied the claims.  The court will now address petitioner's ineffective assistance of counsel claims in turn.

The Sixth Amendment right to counsel includes the right to the effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish a two-prong test.  First, a petitioner must show that the counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time.  Id.  This court must be "highly deferential" to counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Petitioner must overcome "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance" and establish "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed [him] by the Sixth Amendment." Id. at 687; Harrington v. Richter, 562 U.S. 86, 104 (2011).  For the second prong, petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 694.  Even then, however, habeas relief may be

granted under <u>Strickland</u> only if the "result of the proceeding was fundamentally unfair or unreliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993).

       1.      Plea Bargain Advice

The court begins with petitioner's contention that he relied upon his counsel's estimate that petitioner would receive a split sentence of 18 months when petitioner rejected a March 18, 2011, plea offer of 24-29 months imprisonment. In <u>Lafler v. Cooper</u>, 566 U.S. 156 (2012), United States the Supreme Court held that "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." <u>Id.</u> at 167. However, in order to succeed on this claim, petitioner

> must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

<u>Lafler</u>, 566 U.S. at 165; <u>see</u> <u>Missouri v. Frye</u>, 566 U.S. 146, 150 (2012); <u>cf.</u> <u>Merzbacher v. Shearin</u>, 706 F.3d 356, 366 (4th Cir. 2013) (finding that only if Merzbacher's testimony that he would have accepted the plea was deemed credible could <u>Frye</u> and <u>Lafler</u> assist him.).

The court first considers whether petitioner's counsel acted unreasonably. As an initial matter, there is no evidence to suggest that the state offered petitioner a plea of 24-29 months. Even if the state did extend the 24-29 plea offer, trial counsel's estimate that petitioner's sentence would likely be approximately 18 months and a split sentence was not unreasonable under the circumstances. In particular, petitioner could have received a sentence as low as 4-6 months for each count for which he was found guilty of obtaining property by false pretenses, a class H felony.

16

<u>See</u> N.C. Gen. Stat. § 15A-1340.17(c) and (d); (Resp't's Mem. Ex. 2, part 6, p. 5). The superior court judge, additionally, had the discretion to impose either consecutive or concurrent sentences. <u>See</u> N.C. Gen. Stat. § 15A-1354(a) (2007) ("When multiple sentences of imprisonment are imposed on a person at the same time . . ., the sentences may run either concurrently or consecutively, as determined by the court."). Accordingly, the court finds that counsel did not act unreasonably. <u>Burt v. Titlow</u>, 134 S.Ct. 10, 18 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]").

Petitioner, likewise, is unable to establish the prejudice prong of the <u>Strickland</u> test. Specifically, there is no evidence that petitioner would have accepted a plea offer of 24-29 months, particularly in light of the fact that petitioner rejected an earlier plea offer on the record, and then pleaded not guilty to the instant charges. (Resp't's Ex. 7, Volume I, pp. 40-41). Additionally, the length of the 9-11 year sentence that the superior court judge ultimately imposed reflects that it was unlikely that the judge would have accepted a 24-29 month plea bargain, particularly where petitioner pleaded guilty to an aggravating factor. N.C. Gen. Stat. § 15A-1023(b) ("Before accepting a plea pursuant to a plea arrangement in which the prosecutor has agreed to recommend a particular sentence, the judge must advise the parties whether he approves the arrangement and will dispose of the case accordingly."). Thus, petitioner has not demonstrated the prejudice prong of the <u>Strickland</u> test.

2.      Remaining Claims

The court now turns to petitioner's second ineffective assistance of counsel claim–that his counsel did not file any motions, knew very little law, did not move for an expert, and did not challenge the admissibility of statements. Petitioner additionally sets forth a laundry list of

17

complaints related to his trial counsel's performance in his memorandum in support of his § 2254 petition. (DE 5, pp. 97-105). The MAR court summarily denied petitioner's ineffective assistance of counsel claims.

Petitioner's contentions that his counsel did not file any motions or move for an expert are belied by the record which reflects that petitioner's counsel did file motions and did move for an expert witness. (Tr. pp. 22-23, 29, 31-32, 35, 53, 55, 620, 1574, 1576). Petitioner does not provide any factual or evidentiary support for his remaining ineffective assistance of counsel claims. Petitioner, instead, offers only mere speculation and conclusory allegations to support his claims. This is insufficient to establish that his counsel acted unreasonably. See Nickerson, 971 F.2d at 1136 ("In order to obtain an evidentiary hearing on an ineffective assistance claim-or for that matter on any claim-a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."); Bradford v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1992) (stating ineffective assistance of counsel claims that are based on speculation do not meet the burden of showing prejudice under Strickland); see also Bruce v. Robinson, Civil Action No. 9:09-1383-PMD-BM, 2010 WL 4318871, at *8 (D.S.C. July 22, 2010) (stating a habeas petitioner's speculation, without evidence, that the outcome of his trial would have been different absent counsel's purported deficiencies, does not satisfy the prejudice prong of Strickland), appeal dismissed, 418 F. App'x 202 (4th Cir. 2011).

Even if petitioner could establish the first prong of the ineffective assistance of counsel test with respect to these claims, he still would not be entitled to relief because he is unable to establish the second prong. Namely, petitioner has not presented any evidence to establish that but for counsel's alleged errors, the result of the proceedings would have been different. Because petitioner

is unable to establish either prong of the ineffective assistance of counsel test, petitioner failed to establish a constitutional claim. Based upon the foregoing, the court finds that the state court proceedings with respect to petitioner's ineffective assistance of counsel claims were not contrary to, and did not involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Therefore, respondent is entitled to summary judgment for petitioner's ineffective assistance of counsel claims.

g.    Double Jeopardy or Collateral Estoppel

In his sixth claim, petitioner alleges that his criminal conviction violates the Double Jeopardy Clause or the doctrine of collateral estoppel because the Department of Agriculture previously sued him civilly for violating N.C. Gen. Stat. § 106-122(5) (2007), which prohibits false advertising. Petitioner asserts that, as part of the civil action, the state ordered him to close his business and prohibited him from selling food products in the State of North Carolina. Petitioner raised this claim on appeal, and the court of appeals declined to consider the issue because petitioner did not properly raise it at trial. The court of appeals additionally declined to invoke North Carolina Rule of Appellate Procedure 2 to reach the issue because petitioner failed to present any evidence of the alleged civil punishment he received. See Seelig, 738 S.E.2d at 439-440.

Generally, the Double Jeopardy Clause prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. See North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other grounds by, Alabama v. Smith, 490 U.S. 794 (1989). In Hudson v.

19

United States, 522 U.S. 93 (1997), the Court noted that "the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment." Id. at 98–99 (citations omitted). Instead, "[t]he [Double Jeopardy] Clause protects only against the imposition of multiple criminal punishments for the same offense." Id. at 99 (citations omitted).

In this action, petitioner admits that the state did not initiate any criminal proceedings against him in connection with the Department of Agriculture's proceedings pursuant to § 106-122(5). (See (DE 5), pp. 69-72). Although petitioner asserts that the civil proceedings resulted in a permanent injunction prohibiting him from defrauding the public by false advertising and prohibiting him from selling food in North Carolina, petitioner has presented no evidence of any final judgment in the civil action.[5] Even if the permanent injunction was imposed in the civil action, petitioner has pointed to no evidence or case law to suggest that such action is a criminal penalty. See Vick v. Williams, 233 F.3d 213, 222 (4th Cir. 2000) (finding North Carolina court's rejection of double jeopardy drug tax claim under [Department of Revenue of Montana v. Kurth Ranch, 511 U.S. 767 (1994)][6] is not contrary to, nor involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.); State v. Arellano, 165 N.C. App. 609, 616-617, 599 S.E.2d 415, 420 (2004) (rejecting defendant's claim that the state's civil action

---

[5] The court in the civil action granted a motion for a temporary restraining order. ((DE 34), Ex. Q, pp. 34-47). However, there is no evidence with respect to how the civil action ultimately was resolved.

[6] In Department of Revenue of Montana v. Kurth Ranch, 511 U.S. 767 (1994), the United States Supreme Court found that "[t]he proceeding [the State of] Montana initiated to collect a tax on the possession of drugs was the functional equivalent of a successive criminal prosecution that placed the Kurths in jeopardy a second time for the same offence." Id. at 784 (internal quotations omitted).

to permanently enjoin defendants from operating a public nuisance (a brothel) following the defendants' conviction for prostitution did not constitute Double Jeopardy). Petitioner, additionally, has not explained how the doctrine of collateral estoppel applies in the instant action. Therefore, petitioner is not entitled to habeas relief for this claim.

Even if petitioner had presented the evidence necessary to evaluate his claim, a favorable decision on petitioner's claim would require the retroactive application of a rule that is not clearly established. The United States Supreme Court's ruling in Teague v. Lane, 489 U.S. 288, 316 (1989), bars the creation of new constitutional rules that must be applied retroactively. Additionally, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). Based upon the foregoing, respondent's motion for summary judgment is GRANTED as to this claim.

h.      Disproportionate Sentences

In his seventh claim, petitioner contends that his 10 consecutive 10-12 month sentences for 23 counts of obtaining property by false pretenses is grossly disproportionate to the crimes for which he was convicted in violation of the Eighth Amendment. The MAR court adjudicated this claim and denied it as meritless.

The United States Supreme Court in Harmelin v. Michigan, 501 U.S. 957 (1991), held that the Eighth Amendment does not contain a proportionality guarantee. Harmelin, 501 U.S. at 965. "Rather, it forbids only extreme sentences that are grossly disproportionate to the crime." Id. at 1001 (citing Solem v. Helm, 463 U.S. 277, 288 (1983)). "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." Rummel v. Estelle, 445 U.S. 263, 272 (1980). Petitioner's claim does not fit within the exceedingly

21

rare parameters because his sentence is not more extreme or disproportionate than other sentences previously upheld under the Eighth Amendment. See e.g., Harmelin, 501 U.S. at 996 (upholding sentence of life without possibility of parole for first felony offense consisting of possession of 672 grams of cocaine); Lockyer v. Andrade, 538 U.S. 63, 76 (2003) (upholding two consecutive terms of 25 years to life for two counts of petty theft under a recidivist statute). A petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision. Woodford v. Viscotti, 537 U.S. 19, 25 (2002). Petitioner has not provided any evidence in support of his claim which indicates that the sentence imposed is "grossly disproportionate" to his crimes. For this reason, petitioner has not demonstrated that the MAR court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Accordingly, respondent's motion for summary judgment is GRANTED as to this claim.

    i.  Sentencing Calculation

  In his eighth claim, petitioner contends that the State miscalculated his prior record level because it used out-of-state convictions which did not qualify as felonies. Petitioner raised this claim in his MAR and the MAR court summarily denied the claim.

  "The question of whether a conviction under an out-of-state statute is substantially similar to an offense under North Carolina statutes is a question of [state] law." See State v. Wright, 210 N.C. App. 52, 71 (2011) (citations omitted). Likewise, a trial court's assignment of a prior record level is a conclusion of state law. See id. Here, petitioner's assertion that the trial court

misinterpreted state law when it classified his prior out-of-state convictions as a Class I felonies under North Carolina law is not cognizable on federal habeas review. See, e.g., Cunningham v. Perry, No. 3:14cv404-FDW, 2015 WL 4647807, at *12 (W.D.N.C. Aug. 5, 2015) (finding that question of whether a conviction under an out-of-state statute is substantially similar to a North Carolina offense is a question of state law not cognizable on federal habeas review), appeal dismissed, 633 F. App'x 209 (2016).

Even if petitioner's sentence calculation claim was cognizable on habeas review, petitioner still is not entitled to relief. "[A] conviction occurring in a jurisdiction other than North Carolina is classified as a Class I felony if the jurisdiction in which the offense occurred classifies the offense as a felony[.]" N.C. Gen. Stat. § 15A-1340.14(e). If the state proves an out-of-state offense is substantially similar to a higher level felony in North Carolina, the conviction is treated as that class felony for assigning prior record level points. Id. It is, however, only when the state seeks to assign an out-of-state felony conviction a more serious classification then the default Class I status that the state must prove that the out-of-state offense is substantially similar to a corresponding North Carolina felony. State v. Hinton, 196 N.C. App. 750, 755, 675 S.E.2d 672, 675 (2009).

Here, petitioner's prior record level worksheets reflect that petitioner has two out-of-state convictions for wire fraud and grand theft property. (Resp't's Mem. Ex. 2, part 5, pp. 80-81). Both convictions were classified as Class I felonies, and the trial court assigned two points to each conviction. (Id.) Petitioner has produced no evidence to establish that petitioner's out-of-state

convictions do not qualify as felonies. Thus, respondent's motion for summary judgment is GRANTED for this claim.[7]

        j.      Confrontation Clause

In his ninth claim, petitioner argues that the trial court denied his Sixth Amendment right to confront witness when it permitted witness Sean Kraft ("Kraft") to testify at trial through a live, two-way, closed circuit broadcast from Nebraska because Kraft was unable to travel to North Carolina due to a medical condition. Petitioner raised this claim in the court of appeals, which held that admission of Kraft's testimony was not plain error.[8]

A defendant in a criminal trial has the right to be confronted with witnesses against him. See U.S. Const. Amend. V. Face-to-face confrontation meets the four elements of the Confrontation Clause namely, "physical presence, oath, cross-examination, and observation of demeanor by the trier of fact." Maryland v. Craig, 497 U.S. 836, 846 (1990). However, the Court in Craig, held that a defendant's rights pursuant to the Confrontation Clause may be restricted by preventing him from confronting face-to-face the witnesses against him if the reliability of the testimony is otherwise assured and the denial of such face-to-face confrontation is necessary to further an important public policy. Id. at 850. The court in Maryland further stated that "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to testing in the context of an adversary proceeding before the trier of fact." Id. at 845.

---

[7] To the extent petitioner raises an ineffective assistance of counsel claim arising out of his sentence calculation, for the same reasons set forth above, petitioner failed to establish that his trial counsel acted unreasonably.

[8] The court of appeals reviewed for plain error because petitioner did not object to Kraft's testimony at trial. See Seelig, 738 S.E.2d at 432.

"[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities . . . through cross-examination, thereby calling to the attention of the fact finder the reasons for giving scant weight to the witness testimony." Id. at 847 (internal quotation omitted)).

In the case at hand, the court of appeals determined that this case "implicates the States' interest in justly and efficiently resolving a criminal matter when a witness cannot travel because of his health" because Kraft had a history of panic attacks and had suffered a severe panic attack on the date he was scheduled to fly from Nebraska to North Carolina. Seelig, 738 S.E.2d at 435. The court of appeals further found that the Craig test was satisfied in this case because "like the witnesses in Craig, [] Kraft testified under oath, was subject to full cross-examination, and was able to be observed by the judge, jury, and defendant as he testified." Id. (internal quotations and citations omitted). Petitioner has not presented any evidence to establish that the Craig test was not satisfied in this action. Accordingly, petitioner has not demonstrated that the court of appeal's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Accordingly, respondent's motion for summary judgment is GRANTED as to this claim.

C.      Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to

dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

For the foregoing reasons, petitioner's motion for reconsideration (DE 30) is GRANTED.

Respondent's motion for summary judgment (DE 17) is GRANTED. The certificate of appealability

is DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 2nd day of March, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge